CRAWFORD COMPANY, APPELLANT, V. HATHAWAY ET AL., APPELLEES.

FILED NOVEMBER 21, 1900.   No. 10,087.

1. **Trial Court: WRONG REASON FOR DECISION.** A reversal can not be had merely because the trial court gave a wrong reason for its decision.

2. **Invalid Portion of Act: INDUCEMENT TO PASSAGE OF RESIDUE.** Where the invalid portion of an act formed an inducement to the passage of the residue, the whole act falls.

3. ———: ———: **RELYING ON INVALID STATUTE.** One can not successfully rely upon a statute, when he at the same time insists that a material portion thereof is unconstitutional, where it is obvious that the part claimed to be invalid formed an inducement to the passage of the remainder.

4. **Riparian Owner: COMMON LAW RIGHT: ABROGATION: STATUTE.** The act of February 19, 1877 (Session Laws, p. 168), did not abrogate the common law rights of riparian owners as they theretofore existed in this state.

APPEAL from the district court of Dawes county. Tried below before KINKAID, J. *Affirmed.*

*Hamer & Hamer, Allen G. Fisher, Justin E. Porter* and *Willis D. Oldham*, for the appellant:

Crawford is a village in Dawes county, Nebraska. It is situated at the junction of two railways, one being the Burlington and the other the Elkhorn. The village is situate upon the banks of White river. Immediately

above the village the Fort Robinson military reserva-
tion begins.   At this fort is stationed a large number
of regular soldiers in the service of the United States.
Generally a cavalry regiment is kept there.   In 1891
Charles J. Grable, William T. Forbes and other citizens
of the village of Crawford began to agitate the construc-
tion of a canal which should furnish water to the village
as a protection from fire, for domestic use of its citizens
and to farmers for irrigation.   Crawford is in an arid
part of the state, and, without water for domestic use and
for the purpose of sprinkling the streets and lawns, it
would not be habitable.   It has never had any adequate
source of supply except White river.   By reason of the
proximity of the fort, which is situated on the river about
two miles above the village, the water from the river, at
the village, is rendered unfit for use.   The sewage from
the fort runs into the river and destroys its purity.   To
obtain pure water for the use of the citizens of the village,
it was proposed to go up the river above the fort and di-
vert the water from the river and bring it down through
the reservation and around the fort to the village.   The
proper notice was duly posted on June 16, 1891, and work
was begun on the ditch.   The defendant, Leroy Hall,
owns a mill on White river below the town of Crawford.
He claims the right to the water by prescription, as a ri-
parian proprietor.   The land was taken under the pre-
emption law, and settled upon on the 16th day of April,
1885, by defendant's grantor, Llewellyn B. Hall. The claim
of defendant Hall to this water by right of prescription
is absurd.   *Mills v. Traver*, 35 Nebr., 292; *Carroll v.
Patrick*, 23 Nebr., 834; *Nichols v. Council*, 9 S. W. Rep.
[Ark.], 305; *Sparks v. Pierce*, 115 U. S., 408; *Gibson v.
Chouteau*, 13 Wall. [U. S.], 92.

*Samuel Maxwell, Albert W. Crites* and *W. H. Fanning*,
for appellee Leroy Hall:

Except as modified by statute, the common law doc-

trine with respect to the rights of private riparian owners prevails in this country. *Clark v. Cambridge & Arapahoe Irrigation & Improvement Co.*, 45 Nebr., 798.

The riparian owner upon a stream of water is entitled in the absence of grant, license or prescription, to the usual natural flow of water in the stream without material alteration. *Plattsmouth Water Co. v. Smith*, 57 Nebr., 579.

The statement of the case by the plaintiff is partisan and unfair, and is dehors the record. The enterprise which it is seeking to promote is a matter of private speculation.

The cause was argued orally for the appellant by *Francis G. Hamer* and *Willis D. Oldham;* for the appellee Leroy Hall by *Samuel Maxwell.*

*Francis G. Hamer:* At common law the right existed to use water from a running stream for domestic purposes. This right arose from the very necessity of the case. Pursuing this principle and applying it to our arid district, the right to use it for irrigation would exist there. This was not judicial legislation. It was wholesome judicial interpretation. The common law would apply to us, except as modified by our changed conditions and environments. We received the common law from England, where they do not irrigate, not from Lombardy or Peru, where they do irrigate.

The act found on page 168 of the Session Laws of 1877 was simply a legislative recognition of the pre-existing rights, which existed both by the principles of the common law and the general act of congress of 1866, which affected us as a territory and which conferred a right which was vested, and was not repealed by the enabling act or the state constitution, and there was no such an attempt to repeal either in the constitution or the enabling act.

*Willis D. Oldham* contended that congress, by the pas-

sage of the arid land act of 1866, plainly recognized the fact that we had a section of country in this republic in which common law conditions did not exist so far as running water was concerned, and in which it would be impracticable to determine rights to running water by the application of common law principles. That in a country where water is useful for agricultural purposes and where the sovereign power grants, for a nominal consideration, water for the purposes of irrigation, the maxim that "the water runs, and let it run without diminution or alteration," does not apply, but instead thereof we must substitute "water irrigates, and let it irrigate."

*Samuel Maxwell:* The appellant is asking for judicial · legislation, nothing less. At what meridian in this state will the court draw the arbitrary line?

NORVAL, C. J.

This is an appeal from the district court of Dawes county, on the part of the Crawford Company, a corporation, which was the plaintiff below. We think no clearer or fairer statement of this case can be made than that contained in the brief of Judge Maxwell, the venerable counsel for Leroy Hall, and we therefore copy it verbatim.

"The appellant brought an action in the district court of Dawes county against Leroy Hall and others to adjudicate certain rights of the parties and to enjoin Hall, who was charged with making threats to tear down a dam erected by the appellant in White river, in Dawes county, by which nearly all the water in the river was diverted from its channel and caused to flow through the plaintiff's ditch. Issues were made up and the cause submitted to the court, which found that no threats had been made by Hall to tear down or injure the dam, and therefore the injunction against him was unauthorized and without just cause, and thereupon the court finds

'that plaintiff is not entitled to an injunction, and that the defendant, Leroy Hall, is entitled to an injunction against plaintiff as specified herein, and the court, for the purposes only of the injunction herein allowed, further finds that the defendant, Leroy Hall, is a riparian proprietor upon the White river, as alleged in his said answer, and that he and his grantors have been such riparian proprietors for a period of ten years and upwards immediately preceding the bringing of this suit, and he is entitled to all the rights of a riparian proprietor thereon, including the flow of the waters of said stream, as they were wont to do from time immemorial; that the said plaintiff on or about the —— day of January, A. D. 1896, by means of a dam, ditch, headgate, reservoirs, aqueducts, flumes and other appliances then in its possession, did divert the waters of said stream from the natural bed and channel thereof, at a point above the riparian lands of said defendant, Leroy Hall, and have continued to so divert them until this moment, claiming the right to so divert them under and by virtue of the irrigation laws of the state of Nebraska, which right has not yet been adjudicated by the state board of irrigation. And the court further finds that the said plaintiff and the said defendant, the Harris & Cooper Irrigation Company, are not entitled to the relief prayed in the amended supplemental petition and cross-petition respectively, at this time; that the defendant, Leroy Hall, is entitled only to an injunction against the plaintiff prohibiting it from diverting the water of said stream by means of its dam, headgates, ditches and appliances aforesaid until its right to the waters of said stream for the purposes of irrigation shall be adjudicated by the state board of irrigation, or until the further order of this court, and is entitled to have the temporary injunction heretofore granted herein vacated, dissolved and set aside, and is entitled to recover his costs herein expended as against the said plaintiff and against the said Harris & Cooper Irrigation Company.' The court thereupon dis-

missed the petition 'without prejudice to any future adjudication which may be made by the state board of irrigation' or any court having jurisdiction of the right of the plaintiff to the waters of said stream for irrigation and power purposes.' The same decree was made in regard to the cross-petition of Harris & Cooper Irrigation Company, and in the Crawford Company-Hall case 'it is further ordered, adjudged and decreed by the court here that the said plaintiff be, and it is hereby, prohibited and enjoined from further diverting the waters of said stream from the bed and channel thereof by means of its dam, headgate, ditches and appliances aforesaid, until its right thereto shall have been adjudicated by the state board of irrigation, or other proper tribunal, until the further order of this court in that behalf granted; provided, that said injunction shall not restrain the plaintiff from arresting and storing flood waters, or any excess above the usual flow. And the court further finds that it has not jurisdiction of the several causes of action set forth in the several cross-petitions of the defendants herein stated. And the court further finds that the state board of irrigation has exclusive jurisdiction over the several causes of action set forth in plaintiff's petition, and the several cross-petitions. And the court having determined that the court has not original jurisdiction to hear, determine and adjudicate the rights of plaintiff and defendants claimed under the statutes of Nebraska governing the manner of acquiring water rights for irrigation, power, domestic and other purposes, the court refuses in this action and litigation to finally determine and adjudicate any question of law, fact or right.' "

From this decree said Crawford Company appeals to this court. There are many reasons why the decree must be sustained. We may not agree with the court below in all the reasons given by it for rendering its decision against appellant and the cross-petitioners on the various causes set forth in the cross-petitions, but if said court was right in so deciding, the ground on which it

so held is immaterial. Without attempting to enter at length upon a discussion of all the questions presented, the court will content itself with an examination of the principal arguments of appellant to sustain its contention that the decree of the court below is wrong, and which we conceive to be decisive of the case.

It is conceded by appellant that any right it may have in the premises arises out of the irrigation act of 1895 (Compiled Statutes, 1897, ch. 93a), and that without that act neither the appellant nor the numerous cross-petitioners have any right to the waters by them sought to be appropriated, unless the act of 1877 may have abrogated the common law rights of riparian owners, a question to which we will advert later. If this irrigation act of 1895 is valid and constitutional, the trial court properly refused to try and determine the right of priority between these litigants for the reason that the board of irrigation provided by that act is thereby given exclusive original jurisdiction to try those questions, and the same had not been by it heard or in any wise determined. Appellant admits the truth of this proposition, but seeks to avoid it by contending that that portion of the act which erects a board of irrigation, giving it exclusive judicial powers, is in derogation of section 1, article 6, of the constitution, in that the legislature by said act sought to erect a new judicial tribunal in place of one of the regularly constituted courts of the state. Without deciding that that portion of the act is unconstitutional, we will assume its invalidity for the purposes of this case, for a cursory examination of the act will convince any one that the board of irrigation was one of the inducements for its passage, and it is so interwoven with the whole act as to make it impossible to declare this portion thereof invalid without also effecting the destruction of the remainder of the act. *State v. Lancaster County*, 6 Nebr., 474; *Trumble v. Trumble*, 37 Nebr., 340; *Low v. Rees Printing Co.*, 41 Nebr., 127; *State v. Stewart*, 52 Nebr., 243. If, therefore, we assume that a part of the act is void, we

must hold that the remainder of it is also invalid, leaving appellant in no better position than it would have been had it commenced its suit without this act as a basis for its rights. Hence we must conclude that, whether the act is or is not in derogation of any constitutional provision, the suit could not have been maintained, in so far as it sought to adjudicate the rights of the parties to the waters of this stream, unless the common law right of riparian owners to an uninterrupted flow of the water of a stream through or past their realty does not obtain in this state. It is conceded that if the common law principle applicable to riparian proprietors exists, then Hall had the right, at least by prescription, to the full flow of the water of this stream into his mill pond. But it is contended that this common law doctrine is not in force here; first, because it is not applicable to conditions that obtain in this jurisdiction; and second, because it was abrogated by the law of 1877. To the first argument we answer that this court has a number of times approved and recognized the common law rule relative to the rights of riparian owners (*Clark v. Cambridge*, 45 Nebr., 798; *Gill v. Lydick*, 40 Nebr., 508; *Eidemiller Ice Co. v. Guthrie*, 42 Nebr., 238), and has no doubt that that is the proper rule. Nor can we understand how the act of 1877 (Session Laws, 1877, p. 168) in any degree either repealed or modified the common law rule relating to riparian rights. Such rights are not referred to in the act, either directly or by implication, the act being merely an authorization of the owners of canals constituted for public purposes to condemn for right of way and to mortgage their property. In no manner does it seem to touch upon the rights of riparian owners, nor had it the effect claimed by appellant of establishing the separate ownership of land and water in the state of Nebraska. Immediately after its passage, the rights of riparian owners stood exactly where they did immediately prior thereto, and the common law rule which obtained then, now exists. This act of 1877 not having

abrogated the common law rule, appellant is unable to make good any claim of right under the irrigation acts of either 1889, 1893 or 1895, for the reason that said Hall had acquired a vested right to the flow of the water in said stream by prescription, he having erected his dam across said stream more than ten years prior to the commencement of this suit, and having maintained and used it as a mill dam continuously.

On the oral argument it was suggested that we establish a rule for the western portion of this state relative to riparian rights different from that declared in former decisions of this court; in other words, that we hold that while the common law rule might obtain in the eastern portion of the state, where the annual rainfall is sufficient to mature crops, yet in the western portion, where irrigation is a necessity, it does not exist, not being applicable to local conditions. A single suggestion will expose the futility of such an attempt to adjust the law to varying climatic conditions of the same jurisdiction. It is well known that, beginning with the eastern line of the state, the annual amount of rainfall steadily diminishes until the western line of the state is reached. But can any one tell at what particular point in the state the common law rule applicable to riparian owners would cease and the rule said to be better applicable to the less favored portions of the state would begin? Such a rule would merely tend to breed "confusion worse confounded," and would be an assumption of legislative powers by this court, inhibited by the constitution.

Without adverting at length to another question argued by counsel, we might say that we are of the opinion that the lower court did not err either in refusing an injunction to appellant as against Hall, or in granting one in his favor as against it. There is no evidence of record sufficient to justify the lower court in drawing the conclusion that Hall was threatening to or would attempt to destroy appellant's property. There was, however, evidence on which to base the injunction against appel-

lant, the evidence having established the fact that Hall was a riparian proprietor and that appellant was diverting the water from his mill pond and dam. He was entitled to this relief upon his cross-petition, and the lower court was justified in granting it.

Without discussing the case further, we are of the opinion that the decree of the lower court was right, and it is therefore

AFFIRMED.