CRAWFORD COMPANY, APPELLANT, V. HATHAWAY ET AL., APPELLEES.*

FILED FEBRUARY 20, 1901.   No. 10,087.

1. **Motion for Rehearing:** CONTENTS. A motion for a rehearing should concisely state the ground or grounds upon which the decision is assailed.

2. ———: ARGUMENTS AND CITATIONS. Arguments or citations of authorities have no place in a motion for a rehearing.

3 **Jurisdiction:** SUBJECT-MATTER: CONSENT OF PARTIES. Jurisdiction over the subject-matter can not be conferred by the consent of parties.

4. **Waters on Public Domain:** STATUTE: GRANT. Sections 47 and 48, chapter 93a, Compiled Statutes, 1897, constitute no acceptance of any supposed grant to the state by the federal government of the waters on the public domain.

5. **Former Opinion.** Former opinion reported in 60 Nebr., 754, adhered to.

APPEAL from the district court for Dawes county. Heard below before KINKAID, J. Opinion supplemental to one appearing in 60 Nebr., 754. *Rehearing denied.*

*Rehearing allowed.

*Hamer & Hamer, Allen G. Fisher* and *Justin E. Porter*, for appellant.

*Samuel Maxwell, Albert W. Crites* and *W. H. Fanning*, contra.

*J. W. Deweese* and *John S. Kirkpatrick, amicus curiæ.*

NORVAL, C. J.

An opinion was filed in this case during the last term, which is found reported in 60 Nebr., 754. Subsequently the court, owing to the importance of irrigation, and a seeming misapprehension on the part of those interested in that important industry concerning the questions decided by the court, of its own motion ordered a reargument of the case. Since the filing of the opinion counsel for plaintiff has filed what he is pleased to designate a motion for a rehearing, which comprises some forty pages of solidly type-written matter, and is nothing more than an extended argument upon what counsel conceives to be the merits of the case. The attorney who filed the so-called motion is a practitioner of ability and extended experience, and it would seem to us is certainly acquainted with the practice relative to applications for rehearings. Arguments or citations of authorities have no place in a motion for a rehearing. Such motions should concisely state the ground or grounds upon which a rehearing is asked. 18 Ency. Pl. & Pr., 57, and cases cited. Were the questions determined by the prior opinion not important to others, we would be justified in striking the so-called motion from the files. But, for the reason stated, we will endeavor to remove any erroneous impressions that may prevail concerning the former opinion, so far as that is possible, within the issues involved in the case.

Before entering at large upon a discussion of what we conceive to be the only points necessary to a complete de-

termination of the case as made below, it may be well to
mention briefly a few preliminary matters argued by
counsel, which were not adverted to in the former opin-
ion, for the reason that the court did not think them well
taken.  Other questions argued—and they are legion, but
not noticed herein—may be considered as belonging to
the class last mentioned.

At the commencement of the former opinion we stated
that there were many reasons for sustaining the decree
of the lower court.  This is true, but it is manifest that
it is unnecessary to decide more than the two questions
there determined, namely, the right of plaintiff to main-
tain this action before the rights to the waters of the
stream had been adjudicated by the state board of irri-
gation, and the right of Hall to have his vested interests
protected from the invasion of plaintiff.  These are the
two vital questions discussed and decided, and the court
has no doubt they were determined correctly, and is
further satisfied that to a complete determination of the
litigation the examination of other questions argued, or
sought to be raised, is unnecessary at this time.

It is suggested that Hall had an adequate remedy at
law for any damages he might suffer at the hands of
plaintiff, and that, therefore, he was not entitled to re-
lief by injunction.  We do not think the law afforded him
a remedy that was adequate; much more than mere com-
pensatory damages was involved in the invasion of his
rights by plaintiff, and it seems clear that he was en-
titled to the equitable relief accorded.

It is contended, however, that if the court entertain
jurisdiction to enjoin plaintiff from destroying Hall's
vested right to the use of the water for mill purposes, it
should have proceeded to adjudicate all in controversy.
We do not think so.  The proper tribunal before which
to try the rights to the priority was the state board of
irrigation, a special tribunal of limited jurisdiction; and
while the court below could properly interpose its equity
powers, so far as necessary to prevent an invasion of his

rights, it was its duty to relegate the parties to the special tribunal provided by the legislature. In 1 Spelling, Extraordinary Relief, section 41, the author says, in substance, that the rule limiting the power of a court of equity in granting an injunction not to take jurisdiction of the whole case applies especially to cases pending in courts of special and limited jurisdiction. So far as concerns plaintiff's contention that the court should have taken jurisdiction of the whole case, because it had jurisdiction to grant the injunction sought by plaintiff, that is answered by reminding plaintiff that it failed to prove this cause of action. So far as the record discloses, the allegations upon which the prayer for an injunction was based were not sustained. A party can not compel a court to take cognizance of matters which are within the jurisdiction of the board of irrigation by seeking the aid of an injunction, when it is not entitled to such relief. So soon as it is shown that he is not entitled to such injunction, it is the duty of the court to refuse to proceed further in the case made by plaintiff. For that reason, the refusal of the court to adjudicate the question of water rights as between the parties was proper. Nor will the mere consent of the parties confer jurisdiction upon the court, where the subject-matter belongs to a tribunal of special and inferior jurisdiction, like the state board of irrigation, from whose decision an appeal lies to the court in which the parties seek redress.

Counsel for plaintiff complain of our former ruling, to the effect that sections 47 and 48, chapter 93a, Compiled Statutes, 1897, did not abrogate the common law rights of riparian owners as they theretofore existed, and insists that the court should hold that those sections, which are termed the act of 1877, in effect established a separate ownership of land and water in this state, and are in effect the acceptance of a grant by federal statute (Revised Statutes U. S., sec. 2339) of the waters on the public domain to the people of the several states. We copy the so-called act of 1877 as since amended:

"Sec. 47. Any corporation or association organized under the laws of this state for the purpose of constructing and operating canals, reservoirs and other works for irrigation and water power purposes shall have power to borrow money and to mortgage their property and franchises in the same manner and for the same purpose as railroad corporations, and all laws applicable to railroad corporations relating to the borrowing of money and the issuance of bonds and giving of mortgages and the manner of so doing, are hereby declared to be applicable to corporations and associations organized under this act.

"Sec. 48. Canals and other works constructed for irrigation or water power purposes or both are hereby declared to be works of internal improvement, and all laws applicable to works of internal improvement are hereby declared to be applicable to such canal and irrigation works."

There is nothing occult to this act, so far as we can ascertain. It is a simple, plain, straightforward authorization of certain classes of corporations or associations to borrow money, and to condemn for right of way. To give them the right to condemn, their object must be a public one, to conform to the constitutional requirements that private property can be taken for public uses only. The statute gives them nothing, other than these two powers. It does not point out the manner in which the water is to be procured to fill their ditches. The right to irrigate land has always existed everywhere. How then could this act be said to authorize these associations to take water from the streams of the state, irrespective of the rights of individuals thereto? If it had the effect that is claimed for it, to accept the gift from the general government of the water upon the public domain, this acceptance, it will be noted, was in favor solely of corporations or associations organized under the laws of the state. In that case, what became of the rights of individuals to the water, which counsel insists belong to the people and is no longer an adjunct to land? We think

this statute could not possibly have affected the rights of riparian owners. Certainly it was an easy thing for the legislature to have so framed the act as to leave nothing open to conjecture. There was no reason to hide, in an apparently simple act permitting corporations to perform certain very ordinary functions, an acceptance of a grant so important as that mentioned. We have no doubt of the correctness of our conclusion announced in the former opinion, that immediately after the passage of this act "the rights of riparian owners stood exactly where they did immediately prior thereto." We think counsel misapprehends the whole scope and purpose of this act, which to an unbiased mind would seem exceedingly simple, and not in need of the slightest interpretation. No other than one anxious to avoid Hall's contention that he had acquired his right by appropriation and user for more than ten years prior to the time plaintiff commenced this action could see between this easily understood act and the federal statute referred to any necessary or probable connection. Nor could any other than such imagine any connection between this act and the rights of riparian owners or prior appropriators or users. By this prior appropriation and use Hall had acquired a vested right to the waters of this stream, for milling purposes, and it was necessary to invoke the aid of the statute to deprive him of the rights so acquired; hence the endeavor to give to the statute a meaning contrary to its plain language and different from that intended by its framers. There was no necessity for the legislature to recognize any different rule relative to ownership of water than had existed prior thereto in any jurisdiction where the common law is in force. It is as possible to irrigate in England as in Arizona. The laws of gravitation obtain in both jurisdictions. The means of obtaining title to water would differ in the two, but the fact of irrigation would co-exist in both. But counsel for plaintiff seems to assume that irrigation can exist only where the common law rights relative to water have been blotted

out.   We reiterate that the act of 1877 had no effect whatever upon riparian rights.   Whether such common law rights have been in any manner modified or changed since that law was enacted is not within the scope of this inquiry, and for that reason it is not discussed.   The rights of the lawmaking body to legislate where rights have not vested can not be doubted, any more than its lack of power to take away rights which have vested. Before plaintiff claims to have acquired any rights, at least before the commencement of this action, Hall acquired a vested right to use this water for power purposes; he was a prior appropriator.   It is not necessary to a decision of the case that his rights as a mere riparian owner be decided.   He undoubtedly had a vested right as a prior appropriator.

The federal statute, which the plaintiff claims constituted the grant of the waters on the public domain, of which the act of 1877 it is insisted was an acceptance, is as follows: "Whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same; and the right of way for the construction of ditches and canals for the purposes herein specified, is acknowledged and confirmed," etc.   Revised Statutes U. S., sec. 2339.   It is claimed that this statute was a grant by the federal government to the people of the state of the waters on the public domain.   We do not think so.   Its purpose was to confirm the rights of those who have acquired, under certain conditions, the use of the water, and calls that right a vested one, even though the waters are taken from streams upon the public domain and without the assent of the government. If the statute were a grant, it protects Hall, for he appropriated the water of this stream ten years prior to the time this action was commenced.   The statute would

seem rather to confirm his right, than to uphold the contention of plaintiff that its right was prior in time. True, its right was for irrigation purposes. But his was for manufacturing, and that right is acknowledged in the statute. So, under this act, his rights were prior to those of plaintiff. He was a prior appropriator, and by virtue of its provisions, if applicable here, could invoke the aid of the court to protect him from any attempt, on the part of plaintiff, to divert the water from his mill.

Some confusion is probably bred because of the use by the court of the terms "riparian proprietor" and "riparian rights" in the former decision. It is not necessary to the determination of this case that Hall should be designated merely a riparian proprietor. He was more; he was both a riparian owner and a prior appropriator. Whether by virtue of the mere fact that this stream flowed through his property he was entitled to the full flow of the stream is not necessary to the determination of the case. Whether, since Hall acquired his rights, which were vested at the time this action was commenced, the legislature has abrogated or modified the rights of riparian owners merely, as such, in cases where they have not attempted to appropriate the waters flowing through their lands, was not involved in the question being decided, as up to the time he appropriated this water there had been no legislation on the subject of water rights, save this law of 1877. The whole of the discussion turned upon Hall's rights as affected by said act of 1877, and the court, in effect, said that, independent of statute, the common law relative to riparian ownership was applicable to this state. The question of whether it is within the power of the legislature to abrogate or modify the mere naked right to the full flow of the stream, where no act looking to an appropriation has been taken by an individual, was not involved, and is not decided.

It appears from briefs filed by counsel not directly interested in the case at bar, but who, or whose clients are, interested in the subject, as well as from that of counsel

for plaintiff, that it is assumed the court in its former
decision cast doubt upon the validity of the present irri-
gation laws.  A careful reading of the opinion should dis-
sipate any such idea, for, owing to the peculiar position
taken by plaintiff, the court could not inquire into that
question.  It could go no further than to determine that
the portion of the law which plaintiff attacked as invalid
was of such a nature as to make it dependent upon the
other parts of the same law, to such an extent as it could
not be said that the part attacked was not a material
inducement to the legislature to pass the act as a whole.
Having so determined, the court was driven to the con-
clusion announced in the third point of the syllabus, to-
wit, that "One can not successfully rely upon a statute,
when he at the same time insists that a material portion
thereof is unconstitutional, where it is obvious that the
part claimed to be invalid formed an inducement for the
passage of the remainder."  For the reason given, it is
evident that the validity of the irrigation laws is not in
issue, owing to the manifest inconsistency of plaintiff in
attempting to destroy that part of the act which con-
ferred jurisdiction of the subject-matter upon a form dif-
ferent to that in which the action is brought, while it re-
lied upon the validity of the remainder for its cause of
action, when as a matter of law the act is an indivisible
whole, to such extent as that, if one part be destroyed,
the whole fabric falls in ruins.  For the benefit of coun-
sel for plaintiff a somewhat ampler discussion of the
reasons of the court for holding that the act is an insep-
arable whole, so far as relates to the point under con-
sideration, may be desirable.

It is insisted that, although the act which created the
board of irrigation is constitutional, those portions
thereof alone which it is claimed give to it judicial pow-
ers are invalid; that the residue of the act which confers
upon the board the duty to distribute the water is valid,
but that the former is invalid, and can be separated from
the remainder of the act and still leave a valid board of

irrigation and a valid and complete law. However this may be, it does not in anywise obviate the objection that the erection of this board, with all the powers and functions therein conferred upon it, one as much as another, formed a material inducement to the legislature to pass the act. Can it be said that those who voted for it were induced to do so solely because of the power conferred upon it relative to the mere control and distribution of the waters, and that the fact that it was also given the power to decide the priority of right to use the same? Was not the party entitled to so use it also a factor conducing to the passage of the act? It is perfectly natural to expect these factors to co-exist in the same act. They seem a necessary part of it. Before such a board can distribute the water it must determine to whom it must be distributed; and such a determination is judicial in nature, quite as much as the acts of the county board sitting as a board of equalization. It must also necessarily adjudicate the right to use before it can proceed to distribute. Even though such right to use had been previously determined by a regularly constituted court, the board would be obliged to ascertain that such determination had been had before it could distribute it to the party entitled thereto, and such act of ascertaining would be a judicial act, quite as much as if it had determined that the matter of distributing the water and the determination of the right to it, and the person who possesses that right, are inextricably interwoven to the extent that it is practically impossible to separate the one from the other. The court, of course, is not passing upon the question of whether this board is merely an administrative body, and not a court, or whether it partakes of the characteristics of both, but is merely illustrating its reasons for holding that the conferring of administrative functions upon it could not have been the sole inducement for creating it, by pointing out the fact that it is practically impossible to create an administrative body which does not also possess, in a certain degree, judicial functions. But the

fact that such bodies possess to some extent judicial powers does not necessarily make such body a court, within the meaning of the constitution. A merely administrative body may have conferred upon it judicial powers and functions without in anywise trenching upon the powers or functions of the courts as regularly created. It is therefore impossible to discriminate between the judicial functions of a body and its ministerial functions, and say that the legislature was induced to create such body because it possessed powers of one character rather than those of another. If the bringing into being of this board was an inducement to its passage, and that is too patent for denial, the conferring of judicial or *quasi*-judicial functions was as much an inducement to its passage as were those of a mere administrative nature, and any endeavor to separate one function from the other as being the potent and predominant factor in determining the action of the legislature is but a piece of "specious and fantastical sophistry." To illustrate: Take a portion of section 16, chapter 69, Session Laws, 1895, "It shall be the duty of the state board at its first meeting to make proper arrangements for beginning the determination of the priorities of right to use the public waters of the state. * * * ` The method of determining the priority and amount of appropriation shall be determined by the said state board, which at its first meeting shall designate the streams to be first adjudicated." Counsel for plaintiff urged that this act of 1895 would seem to oust the courts of jurisdiction to try priorities of right to use the water, and we are asked to declare that portion of the law invalid for the reason that it was not a material inducement to the legislature to pass the law, the purpose of the legislature being rather to enact an irrigation law than to create a court. But before rights under a law can be secured there must be an instrumentality through which such law can be enforced. This the law in question furnished by erecting an irrigation board having jurisdiction over

these very rights. Was not the creation of this board, with all its powers, the one as much as the other, an inducement to its passage? How is it possible to believe that section 16, above quoted, and others connected therewith were not, all and each of them, material in influencing the legislature in making the whole act a law? No amount of refining, or the urging of immaterial distinctions, will dispose of the proposition that the erection of this board of irrigation, with all the duties and powers conferred upon it, was so inextricably interwoven with the rest of the act as to make the whole indivisible; and it is impossible to separate one function of the board from another and say that this or that was or was not an inducement to its passage. For that reason the act must stand as a whole or entirely fail; but the question of whether it must stand or shall fall is not involved in the case at bar. The court does not hold that the law is in any particular unconstitutional. It does not even cast a doubt upon its validity. It does not decide that the judicial functions conferred upon the board in anywise trench upon the constitutional powers of courts, or whether they are such as may be properly conferred upon administrative boards. It merely decides that if the act in question is valid, plaintiff proceeded in the wrong form. If it is unconstitutional in the respect urged by counsel, which we do not decide, it is void as a whole, and plaintiff's cause of action, if any it has, so far as relates to its right to divert the waters, falls with the law, on which it is wholly dependent.

The motion for a rehearing is denied.

REHEARING DENIED.