CITY OF SCOTTSBLUFF, NEBRASKA, A MUNICIPAL CORPORATION, PLAINTIFF, v. NORBERT T. TIEMANN, GOVERNOR OF THE STATE OF NEBRASKA, DEFENDANT.

175 N. W. 2d 74

Filed March 6, 1970. No. 37463.

Original action.   Judgment for plaintiff.

Loren G. Olsson, for plaintiff.

Clarence A. H. Meyer, Attorney General, and Melvin K. Kammerlohr, for defendant.

Heard before WHITE, C. J., CARTER, SPENCER, SMITH, and McCOWN, JJ., and SCHEELE and BOYLES, District Judges.

WHITE, C. J.

This is an original action instituted in this court and brought by the City of Scottsbluff alleging the unconstitutionality of an act of the 1969 Legislature which directs certain cities of the first class, falling within certain prescribed population limits, to establish, maintain, and financially support a municipal court.   In addition, the petition asks that this court enjoin the Governor from appointing a judge to fill a vacancy on the purported municipal court in Scottsbluff, Nebraska.

The issues presented by the pleadings are solely issues of law. Proper analysis of the constitutional issues involved necessitates the thorough understanding of the pertinent provisions of the legislative bill as originally adopted and an analysis of its subsequent amendments. Legislative Bill 1293, which is the act in question in this case, as originally enacted on May 5, 1969, provided in part: (Italics indicate new language.)

"Sec. 3. There is hereby established and created in each city of the metropolitan * * *, primary, *and first * * * class cities having more than thirteen thousand population located in a county having a population of more than thirty-three thousand inhabitants according to the 1960 federal census,* a municipal court, which shall be held in such place as may be provided for that purpose within such city. *Any other city of the first class may establish a municipal court to be subject to the provisions of Chapter 26, article 1, upon a vote of the qualified electors of such city. Any proposition to establish such a municipal court shall be submitted by action of the city council at any regular municipal election.*

"Sec. 4. *In each city of the first class having more than thirteen thousand population located in a county having a population of more than thirty-three thousand inhabitants according to the 1960 federal census there shall be one judge of the municipal court, and when authorized by the governing body there shall be two judges of the municipal court, who shall be selected and retained in office in accordance with the provisions of Article V, section 21 (the merit system of judicial selection), of the Constitution of Nebraska.*

"Sec. 5. Each judge of the municipal court in a city of the metropolitan * * * primary, *or first class having more than thirteen thousand population located in a county having a population of more than thirty-three thousand inhabitants according to the 1960 federal census* shall be paid a salary of fifteen thousand dollars per annum, except as provided in section 26-103.01. * * *

The employees and assistants of the clerk of the municipal court in a city of the * * * *first class having more than thirteen thousand population located in a county having a population of more than thirty-three thousand inhabitants according to the 1960 federal census* shall receive such salary as may be fixed by the city commission or council. All salaries shall be paid out of the general fund of such cities.

"Sec. 6. In cities of the metropolitan * * * primary, *and first* class *having more than thirteen thousand population located in a county having a population of more than thirty-three thousand inhabitants according to the 1960 federal census* the municipal court shall in all cases, unless otherwise provided by law, have jurisdiction over territory coextensive with the boundaries of the justice of the peace districts in which such courts are located, as such boundaries are now or hereafter established; * * *.

"Sec. 7. The party appealing from a decree, judgment, or order of a municipal court in metropolitan * * * primary, *or first* class city *having more than thirteen thousand population located in a county having a population of more than thirty-three thousand inhabitants according to the 1960 federal census,* or any part thereof, shall, within ten days * * *.

"Sec. 8. *Any city attorney of a city having a municipal court may sign and prosecute complaints in the municipal court for misdemeanors, which are violations of state law, and which were committed within the jurisdiction of such court."*

From May 27, 1969, until the adjournment of the Legislature on September 24, 1969, this act was subjected to detailed and piecemeal amendments which is significant with relation to the constitutional issues raised herein.

Section 3 of L.B. 1293, which creates the court and sets its population classification, was subsequently amended by L.B. 787 on May 27, 1969, changing the controlling federal census standard from "1960" to "most

recent." This section of the statute was subsequently amended on another subject but leaving the "most recent" language intact. See L.B. 1089, on June 11, 1969.

Section 4 of L. B. 1293 provides for a judge of the municipal court created under section 3, the creation of which is based upon the population figures according to the 1960 federal census. On September 24, 1969, section 4 was amended by L.B. 1070. However, the amendment pertained only to the designation of commencement of the full term of office for such judge, and left untouched the reference to the "1960 federal census" as originally enacted.

Section 5 of L. B. 1293, with relation to salary, was amended by L.B. 853 on July 17, 1969, changing the amount of the salary and the reference to the federal census from "1960" to "most recent."

Section 6 of L.B. 1293, which was not amended, deals with the jurisdiction of the newly created municipal courts in certain first class cities *based upon the 1960 federal census.*

Section 7 of L.B. 1293, which was not amended, provides for a method of appeal from the newly created courts, and again makes reference to those cities of the first class, *based upon the 1960 federal census.*

The history of this legislation in chronological summary is as follows:

| Section | Subject | Final Passage | Approved by Governor |
|---|---|---|---|
| Sec. 6 of L.B. 1293 | Jurisdiction of court | May 7, 1969 | May 12, 1969 |
| Sec. 7 of L.B. 1293 | Appeals from court | May 7, 1969 | May 12, 1969 |
| Section 3 of L.B. 1293 as amended by Sec. 1 of | Creation of court | | |
| LB787 and reamended by Sec. 1 of | | May 27, 1969 | May 28, 1969 |
| LB 1089 | | June 11, 1969 | June 13, 1969 |

| Sec. 5 of L.B. 1293 as amended by Sec. 1 of LB 853 | Salary of judges | July 17, 1969 | July 24, 1969 |
|---|---|---|---|
| Sec. 4 of L.B. 1293 as amended by Sec. 6 of LB 1070 | Number of judges, terms, vacancies | Sept. 24, 1969 | Sept. 26, 1969 |

In this declaratory judgment action we hold that L.B. 1293 as amended is invalid on the grounds that it constitutes special legislation, in violation of Article III, section 18, of the Constitution of Nebraska, because (1) it creates a permanently closed class, and (2) it is totally arbitrary and unreasonable in its method of classification.

According to the 1960 federal census only 2 of the 22 first class cities in Nebraska, Grand Island and Scottsbluff, meet the population requirements set forth in the bill, of more than 13,000 inhabitants in a city situated in counties of more than 33,000 inhabitants. The class is thus permanently closed with respect to the provision for judges (section 4), the provision for jurisdiction (section 6), and the method of appeal from the municipal courts thus created (section 7). The law is unmistakably clear that a statute classifying cities for legislative purposes in such a way that no other city may ever be added to the class violates the constitutional provision forbidding special laws where general laws can be applicable. Axberg v. City of Lincoln, 141 Neb. 55, 2 N. W. 2d 613, 141 A. L. R. 894 (1942). The court in the Axberg case further held: "Under its terms the city of Lincoln is not obliged to pay firemen's pensions while the city of Grand Island is required to do so, even though they are both cities of the first class. The *freezing of the class in this manner* has *repeatedly* been held to violate the uniformity provisions of section 18, art. III of the Constitution." (Emphasis supplied.) The Axberg case concerned a statute which provided

in part that all first class cities "having a paid fire department, except any city of the first class that has *heretofore* adopted a charter for its own government, shall pension all firemen * * *." This court held that the statute on its face was not uniform in its operation upon the designated class, since only those cities of the first class who had adopted a home rule charter prior to the statute's enactment in 1923 were not obliged to pension firemen. Thus, the City of Lincoln would have been relieved of this obligation, since home rule was adopted in Lincoln in 1918, while the City of Grand Island would not have been relieved of this obligation as home rule was adopted in that city in 1928.

In State v. Scott, on rehearing, 70 Neb. 685, 100 N. W. 812 (1904), this court held: "An act of the Legislature which regulates a county office, and which by its terms limits its operation to counties having a population of 50,000 'according to the census of 1900,' is local and special in its application, since it can never apply to any other counties than the two which were in the class at the time of the passage of the act."

In State ex rel. Conkling v. Kelso, 92 Neb. 628, 139 N. W. 226 (1912), a case analogous in principle to our present case, this court said: "The rule appears to be settled by an almost unbroken line of decisions that a classification which limits the application of the law to present condition, and leaves no room or opportunity for an increase in the numbers of the class by future growth or development, is special, and a violation of the clause of the constitution above quoted. It follows that the limitation in the act to all county seats which had existed for ten successive years at the time of the passage of the act, and not permitting the rule to be applied to other counties, is *equivalent to the naming of the county seats* of that class, and is therefore void." (Emphasis supplied.)

We therefore hold that sections 4, 6, and 7 of L.B. 1293 constitute special legislation under Article III, sec-

tion 18, of the Constitution of Nebraska, because they classify cities for legislative purposes in such a way that no other city of the first class may be ever added to the class designated. Section 4, relating to an integral part of the act, providing for the judge of the municipal court, restricts the population standard to the 1960 federal census alone. Section 3, as amended, requires the creation of a municipal court in cities of the first class having a population of more than 13,000, situated in a county of more than 33,000 according to the "most recent" federal census. The language of these statutes is clear and unambiguous. It requires no interpretation. Reading section 4 together with section 3, they clearly provide that a municipal court judge shall be provided for those courts which are created based upon the 1960 federal census yet no judge is provided in the case of cities creating municipal courts on the basis of the "most recent" federal census. In this way the legislation assured that in practical operation the act would be restricted to the cities of Scottsbluff and Grand Island.

Section 6 of L.B. 1293 sets the jurisdictional limits of the municipal courts created in accordance with the population standard based upon the *1960 federal census.* It would therefore appear that if and when new courts *were mandatorily* created according to the *most recent federal census* under section 3, or *optionally created by a city under the other provisions of the statute,* that the court then would have no such jurisdiction.

Again section 7 of L.B. 1293 establishes the appeal procedure from municipal courts created according to the *1960 federal census.* Again, it clearly appears that the appeal sections would be restricted to the cities of Scottsbluff and Grand Island. The general section, section 3, purports to allow other cities of the first class to come into the subdivided class. Although the population classification was subject to intense scrutiny by the Legislature, as is evidenced by repeated specific amendments over a 4-month period, the failure to amend

or change sections 6 and 7 indicate an intention to keep and restrict the act to the limits of its original operating design, and at a minimum, to eliminate all possible inducement for cities of the first class to come under the provisions of the act.

The State contends that these problems can be cured in the act by merely reading "1960 federal census" to mean "most current federal census." It is urged that the legislative intent is clear and that this inadvertence should be cured by the court rewriting the act and its different sections to be consistent. It is not even contended by the State that the words are ambiguous or susceptible of any other but one interpretation. The words "most recent federal census" and "the 1960 federal census" are words of ordinary meaning, plain, direct, and they mean what they say and say what they mean. In a similar situation we recently restated the law in this area in Bachus v. Swanson, 179 Neb. 1, 136 N. W. 2d 189 (1965), as follows: "The position seems to be that any statute passed by the Legislature should be open to construction as a matter of course, and that we should not only judicially construe it, but judicially rewrite it. *A statute is not to be read as if open to construction as a matter of course.* Where the words of a statute are plain, direct, and unambiguous, no interpretation is needed to ascertain the meaning. In the absence of anything to indicate the contrary, words must be given their ordinary meaning. It is not within the province of a court to read a meaning into a statute that is not warranted by the legislative language. *Neither is it within the province of a court to read anything plain, direct, and unambiguous out of a statute.* Franzen v. Blakley, 155 Neb. 621, 52 N. W. 2d 833; Todd v. County of Box Butte, 169 Neb. 311, 99 N. W. 2d 245." (Emphasis supplied.)

But even accepting the standard the State asks us to apply, was this unambiguous provision inadvertent or was it intentional? We have already noted the history

of the act and the passage of the successive amendments. It appears the Legislature's attention was redirected repeatedly to the use of the federal census in the consideration of the amendments of these vital portions of the act. It is quite unreasonable, if not incredible, to indulge in such an assumption of inadvertence. Moreover, as we have intimated, the restriction to the 1960 federal census in the operative sections as to the judge, jurisdiction, and appeal guarantees against the mandatory creation of a municipal court except in the cities of Scottsbluff and Grand Island. We find no merit in this contention of the State.

It requires little argument that the sections involved are not severable, and that the whole act must fall. The State does not contend that they are severable. The rule is that when invalid portions of a statute are so interwoven with the rest of the act so that the act may not be operative with the void portions eliminated or where it is obvious from an inspection of the act that the invalid portion formed the inducement for the passage of the act, the whole act fails. Terry Carpenter, Inc. v. Wood, 177 Neb. 515, 129 N. W. 2d 475 (1964). See, also, Peterson v. Hancock, 155 Neb. 801, 54 N. W. 2d 85 (1952); Thorin v. Burke, 146 Neb. 94, 18 N. W. 2d 664 (1945); State ex rel. O'Connor v. Tusa, 130 Neb. 528, 265 N. W. 524 (1936); State ex rel. Polk v. Galusha, 74 Neb. 188, 104 N. W. 197 (1905); Crawford Co. v. Hathaway, 60 Neb. 754, 84 N. W. 271 (1900), rehearing denied, 61 Neb. 317, 85 N. W. 303 (1901); State ex rel. Cornell v. Poynter, 59 Neb. 417, 81 N. W. 431 (1899); State ex rel. Scott v. Bowen, 54 Neb. 211, 74 N. W. 615 (1898); State ex rel. Smyth v. Magney, 52 Neb. 508, 72 N. W. 1006 (1897); State ex rel. Comstock v. Stewart, 52 Neb. 243, 71 N. W. 998 (1897).

We turn now to another reason for holding the act unconstitutional. A closely related ground is that the subdivisional classification of first class cities made here

is an unreasonable and arbitrary one, regardless of whether it sets up a "closed class." It is competent for the Legislature to classify objects of legislation and if the classification is reasonable and not arbitrary, it is a legitimate exercise of legislative power. Baker v. Gillan, 68 Neb. 368, 94 N. W. 615 (1903). The classification must rest upon real differences in situation and circumstances surrounding members of the class relative to the subject of the legislation which renders appropriate its enactment. Stanton v. Mattson, 175 Neb. 767, 123 N. W. 2d 844 (1963); May v City of Kearney, 145 Neb. 475, 17 N. W. 2d 448 (1945); Steinacher v. Swanson, 131 Neb. 439, 268 N. W. 317 (1936); State ex rel. Taylor v. Hall, 129 Neb. 669, 262 N. W. 835 (1935). The power of classification rests with the Legislature and cannot be interfered with by the courts unless it is clearly apparent that the Legislature has by artificial and baseless classification attempted to evade and violate provisions of the Constitution prohibiting local and special legislation. United Community Services v. Omaha Nat. Bank, 162 Neb. 786, 77 N. W. 2d 576 (1956). A legislative classification, in order to be valid, must be based upon some reason of public policy, some substantial difference of situation or circumstances, that would naturally suggest the justice or expediency of diverse legislation with respect to the objects to be classified. *Classifications for the purpose of legislation must be real and not illusive; they cannot be based on distinctions without a substantial difference.* Wittler v. Baumgartner, 180 Neb. 446, 144 N. W. 2d 62 (1966); Terry Carpenter, Inc. v. Wood, *supra;* State Securities Co. v. Ley, 177 Neb. 251, 128 N. W. 2d 766 (1964).

The population, according to the most recent (1960) federal census of the pertinent cities excluded from the act and of the two cities included within it, and of the counties in which such cities are situated, is as follows:

| City (excluded) | | County | |
|---|---|---|---|
| Beatrice | 12,132 | Gage | 26,818 |
| Columbus | 12,476 | Platte | 23,992 |
| Fremont | 19,698 | Dodge | 32,471 |
| Hastings | 21,412 | Adams | 28,944 |
| Kearney | 14,210 | Buffalo | 26,236 |
| Norfolk | 13,640 | Madison | 25,674 |
| North Platte | 17,184 | Lincoln | 28,491 |
| City (included) | | County | |
| Grand Island | 25,742 | Hall | 35,757 |
| Scottsbluff | 13,377 | Scotts Bluff | 33,809 |

First we observe that the act is an attempt to create a subclass within the already existing specific governmental population classification of first class cities. We further observe that in the subclass created by the statute, a municipal court is *mandatory*, while in all of the other cities, of greater or lesser population than Scottsbluff, the choice is made by the electors. And that this quite apparently unusual classification is accomplished by tieing it in with a county population of over 33,000.

It is elementary that it must appear in a legislative act that there is some reasonable difference of situation with relation to the objects of the legislation that would justify the discrimination inherent in any legislative classification. As the name indicates, municipal courts created on a population classification basis, are primarily for the benefit of the cities involved. This act leaves no doubt in this area because the quarters, salaries of the judges, the clerk, and the municipal court employees are mandatorily required to be paid out of the general fund of the cities involved. Five cities of the first class, Fremont (19,698), Hastings (21,412), Kearney (14,210), Norfolk (13,640), and North Platte (17,184) exceed the population of the City of Scottsbluff. Considering population as a standard, and the primary object of the legislation, it not only does not appear that there is any reasonable relation in the population classification, but it appears affirmatively that there is no uniformity of

operation within the classification standards set up by the Legislature itself with relation to the cities. We cannot discover any reasonableness in arbitrarily imposing by mandatory act a municipal court on a city of 13,377 and permitting five cities of greater population to make such determination upon the choice of the electors. Why should there be choice in the higher populated cities and the creation of a mandatory court in the seventh-ranked city? Moreover, Beatrice and Columbus, two cities within a range of about 1,000 population of Scottsbluff, are excluded.

Since the newly created courts in the act are primarily for the benefit of the city, there would appear to be no sound reason for tieing their mandatory creation to county population. But, if we were to assume that such a tied-in correlation is permissible, it does not appear a reasonable one in the present case. We can detect no scheme or apparent legal relationship to the purposes of the act in the proportions present between the city and the county populations. They appear to be vicarious, irrational, and totally unrelated. The attempt to explain it perhaps even defies speculation. There is not even an attempt to set up proportional city and county populations. Nor does any peculiar factor appear which would tie in the need as a class for a municipal court in a city of 13,377 with a county population of over 33,000 with the need for a municipal court in a city of 25,742 in a county of similar population. Nor can we discover any reconcilable geographical factor that would give an appearance of reasonableness to a classification, so irrationally disproportionate on its face.

What does appear is, once the population standards were arbitrarily established, that the act was expressly designed to compel the creation of a municipal court in the City of Scottsbluff. It would appear that the inclusion of the City of Grand Island within this subclassification is either fortuitous or designed to avoid a sub-

classification which on its face would have one city only. The lack of correlation of any tie-in with the county population can be further illustrated by pointing out that all five of the excluded cities of the first class which exceed Scottsbluff in population also have a county population ranging from 25,674 to 32,471 according to the 1960 census. And yet, Fremont located in Dodge County, exceeds the minimum city population by 6,698 and fails to attain the county population by only 529, yet it is excluded from the subclassification. A further analysis of the population figures or an attempt to rationalize the proportions between city populations or their relation to county populations is unnecessary. Pertinent here is the pronouncement of our court in Axberg v. City of Lincoln, *supra,* which held: "We think that section 35-201, Comp. St. 1929, is not only void as local and special legislation in its application, but it is violative of section 18, art. III of the Constitution, in that it is not uniform as to class. *There is no sufficient reason advanced why one city of the first class should be exempted from the special obligations and burdens of the firemen's pension law, while others in the same class are required to submit to such obligations and burdens.* The attempt of the legislature, by the enactment of section 35-201, Comp. St. 1929, to divide the class constitutes arbitrary action, and the contentions of appellees to the contrary are without merit. It therefore violates section 18, art. III of the Constitution." (Emphasis supplied.)

In light of the conclusions we have reached herein it is unnecessary to discuss the further contentions that have been raised in the briefs herein. We hold that L.B. 1293, 1969 Legislative Session, constitutes special legislation and is unconstitutional and void as violative of Article III, section 18, of the Constitution of Nebraska.

In this original action, therefore, judgment shall be entered for the plaintiff and the injunction restraining

the enforcement of the act will be issued as prayed for in the plaintiff's petition.

JUDGMENT FOR PLAINTIFF.