THE STATE OF KANSAS, *on the relation of F. B. Dawes, Attorney General*, v. JOHN W. BREIDENTHAL.

BANK COMMISSIONER—*Appointment—Beginning of Official Term.* In 1891 an act of the legislature was passed providing for the organization of banks, the regulation of the banking business, and authorizing the appointment of a bank commissioner. The act was passed in the closing days of the legislative session, and did not take effect until a few days after the legislature had adjourned. It provided that the governor should appoint, by and with the advice and consent of the senate, a bank commissioner, whose term of office should be four years and until his successor was appointed and qualified, but made no provision for the filling of vacancies that might occur in the office. On March 21, 1891, J. was appointed by the governor, and the senate not being in session the appointment was not confirmed. He qualified and took possession of the office, and continued to perform all the duties thereof until his successor was appointed and had qualified. At the next session of the senate, in February, 1893, B. was appointed, and his appointment was confirmed by the senate. *Held*, That the appointment of J. was only provisional and temporary, and the commencement of the official term began to run from the appointment of B., and that he is entitled to hold the office for four years from the time of that appointment.

*Original Proceeding in Quo Warranto.*

ALL the material facts of this case are stated in the opinion herein, filed June 8, 1895.

*F. B. Dawes*, attorney general, *D. M. Valentine*, and *J. W. Ady*, for plaintiff.

*David Overmyer*, and *G. C. Clemens*, for defendant.

The opinion of the court was delivered by

JOHNSTON, J. : This is a proceeding in *quo warranto*, brought by the attorney general in the name of the state, against John W. Breidenthal, to determine his title to the office of bank commissioner, and to oust him therefrom. The facts in the case, about which there is no controversy, are stated in the plaintiff's petition, and the questions for determination arise upon a demurrer of the defendant to the petition. It appears that the legislature of 1891, shortly before its final adjournment, enacted a law providing for the organization of banks and the regulation of the banking business, and it contained the following provision :

"The governor shall appoint, by and with the advice and consent of the senate, a bank commissioner for the state of Kansas, whose term of office shall be four years and until his successor is appointed and qualified." (Laws of 1891, ch. 43, § 21.)

This act, although approved March 10, 1891, did not take effect until March 21, 1891, and at that time the legislature had adjourned, and there was no session of the senate to confirm an appointment made after the law became operative until the next regular biennial session, which convened in January, 1893. On March 21, 1891, the day on which the act took effect, Gov. L. U. Humphrey appointed as bank commissioner Charles F. Johnson, who it is admitted was duly qualified and eligible to take and hold the office under the provisions of law, and a commission as bank commissioner, under the seal of the state, was issued to him. The appointment was not confirmed by the senate, but immediately upon receiving his commission, Johnson duly qualified as bank commissioner, took possession of the office, and con-

tinued to exercise all the duties and prerogatives thereof until February 13, 1893. On February 8, 1893, Gov. L. D. Lewelling, who had succeeded Governor Humphrey, instead of renewing the appointment of Charles F. Johnson and sending his name to the senate, nominated and appointed for the same office John W. Breidenthal, a citizen and elector duly qualified and eligible to take and hold the office to which he was appointed. That nomination and appointment were submitted to the state senate then in session, and were by the senate, on the 13th day of February, 1893, confirmed. Whereupon the governor issued to Breidenthal a commission, and he immediately took possession of the office and has ever since exercised all the duties and prerogatives of the same, and still retains possession of the office, exercising its duties and privileges and receiving the emoluments thereof. The message of the governor nominating and appointing John W. Breidenthal to office is as follows :

" I have this day appointed John W. Breidenthal as bank commissioner of the state of Kansas, and respectfully request his confirmation by your honorable body. Very respectfully,

L. D. LEWELLING, *Governor.*"

After the appointment and confirmation of Breidenthal, he qualified in the manner and form prescribed by law. Four years from the time that Charles F. Johnson was appointed, the senate of the state not being in session, Gov. E. N. Morrill appointed to the office of bank commissioner C. S. Jobes, a citizen and elector who was duly qualified and eligible to take and exercise the duties of the office of bank commissioner. There is no claim that Breidenthal has resigned or been removed, nor that he has forfeited or surren-

dered the office. His claim is that he was the first person regularly appointed to the office, and that in the absence of any provision fixing the beginning of the term, he was appointed for a full term of four years, which will not expire until February, 1897. The state contends that it was the duty of the governor to fill the office immediately after the law became effective, and that having filled it, the first term began with the appointment of Johnson in 1891, and that as the term could not under a constitutional limitation be longer than four years, the term ended on March 21, 1895, when it became the duty of the governor to make another appointment for the second term.

There is no statute which fixes the time for the beginning or ending of the official term, and no provision with respect to the filling of vacancies in the office or term, nor is there a statute in regard to the appointment of a bank commissioner, the duration of the term, or the tenure of office, other than that which has been quoted. It provides, as we have seen, that the term shall be four years, "and until his successor is appointed and qualified." It is well argued that the legislature cannot by any method extend the fixed term of an office which is limited by the constitution. Under § 2 of article 15 of the constitution it is provided that —

"The tenure of any office not herein provided for may be declared by law; when not so declared, such office shall be held during the pleasure of the authority making the appointment, but the legislature shall not create any office the tenure of which shall be longer than four years."

It seems to be conceded by the parties that the legislature did not intend to enlarge the term or to extend it beyond the fixed period of four years. It is said

that the hold-over provision was not intended to enter into or to be descriptive of the term ; but upon grounds of public convenience and necessity, and in order to prevent an absolute vacancy, the law will recognize the incumbent as an officer *de facto* until his successor is appointed and qualified. It is the opinion of the court that, as a " term " means a fixed and definite period of time, the time definitely fixed in the law at four years is the term of office, and that the hold-over provision, whatever view may be taken of the same, does not invalidate or destroy the entire section with reference to tenure. The appointing power would in any event have the right to fill the office at the end of four years, and the right to exercise that power returns to the appointing power at intervals of not more than four years.

Then we have the remaining question of when the term begins. In the absence of a statutory provision upon that subject, it has been held that where a statute authorizes the appointment of an official and declares the tenure of the office, and is silent on the point as to the beginning of the first appointee's term, the commencement of the official term begins to run from the date of the first appointment. (*Hale v. Bischoff*, 53 Kas, 301.) The statute authorizes the governor to appoint a commissioner, but expressly provides that it shall be done by and with the advice and consent of the senate. No provision is made with respect to the first appointment in case there is no senate in session, nor for making an appointment to fill a vacancy which occurs when the concurrence of the senate cannot be obtained. The constitution provides for only biennial sessions of the legislature, and all know that an extra session of that body is rarely called or held. The law providing for the regulation of banks

and the appointment of a commissioner was enacted for a public purpose and from a supposed public necessity. It was manifestly the intention of the legislature that it should become operative at once, and whether it went into effect before or after the adjournment of the legislature, that a commissioner would be appointed to execute and carry out its requirements. It was finally passed and approved in the closing days of the legislature, and was not published until several days after the final adjournment. The language and nature of the act indicated an expectation on the part of the legislature that the act would go into immediate effect, and that an officer would be appointed to execute its provisions. Evidently the legislature did not intend that the office should remain vacant for two years after the act went into effect, and as a matter of necessity must have intended that the governor, who by the terms of the act is authorized to appoint, would supply not only the original vacancy but any other vacancy that might occur when the legislature was not in session. It is true that officers are to be chosen or appointed in the manner prescribed by law. It would seem from the language of this act, as well as from the powers conferred upon the governor by the constitution and laws, that he would be warranted in filling the original or other vacancy in the office when the senate was not in session and had no opportunity to unite in making the appointment. It is contended by the state, and apparently conceded by one of the counsel for the defendant, that this is an implied executive function of the governor, but it is further contended in behalf of the defendant that it is only a temporary or provisional appointment, warranted only by the necessities and conveniencies of the public. It is claimed by the defendant, and a majority of the court are of the opin-

ion, that no regular appointment could be made which would fix the beginning of the first regular term, except by the concurrent action of the full appointing power. It is said that the appointment first made by the governor was only to fill what has been termed an original vacancy, and is a mere temporary appointment, depending upon inference and implication rather than upon any express provision of law, and is only justified by necessity and because the law abhors an actual vacancy. It is treated as an exceptional vacancy, which forms no part of a regular term, and that under the decisions of this state the making of such an appointment is only a temporary provision to continue until the regular term commences. (*Hagerty v. Arnold,* 13 Kas. 367, and cases cited.)

There are numerous authorities, which it is unnecessary to cite, holding that officers must be chosen in the manner prescribed by the law, and the view of a majority of the court is that, the legislature having declared that the appointing power resides in the governor and the senate, there was no regular appointment for the term mentioned in the statute until the choice was made by those whom the statute invested with the power of appointment. As the commencement of the official term is to be fixed by the appointment, it is held to mean a full legal appointment, and not a mere special or temporary appointment made to fill an original vacancy; and it is said that if any other view is taken, it would be within the power of the governor to make every appointment at a time when the legislature was not in session, and in that way the senate would be entirely deprived of any participation in the choice of a bank commissioner, and thus defeat the manifest purpose of the legislature as to the method of choosing that officer. The con-

clusion is that, as the appointing power defined by the
statute consists of the governor and the senate together,
and as the governor and senate did not act jointly until
February, 1893, at the time when the defendant was
appointed and confirmed, it follows that he was the
first commissioner regularly appointed for a full term,
and that the term for which he was chosen will not
expire until February, 1897.

The writer is unable to concur in this conclusion,
and his views, very briefly stated, are as follows : When
the office of bank commissioner was created it was *ipso
facto* vacant, and there being no senate to advise and
consent, it was the duty and within the power of the
governor to fill the office by appointment. Whether
this is to be treated as an exceptional and temporary
provision, and whether or not it is justified on the
mere grounds of public convenience or necessity, it
must be conceded that the appointment of Charles F.
Johnson, on March 21, 1891, was legally made and
invested him with all the powers which he could have
exercised if there had been a confirmation. There
were no limits on his power, and his duties and respon-
sibilities were the same as if the choice of the officer
had been shared by the senate. He was lawfully in
office, his right and authority were recognized by all
the departments of the government, and he exercised
the duties of the place with the general acquiescence of
the people of the state. Having been legally appointed
and lawfully invested with the office, and it having
been decided that where the law is silent about the
commencement of a term a legal appointment fixes
the beginning of the first term, it is the opinion of
the writer that the first term of the office commenced
upon March 21, 1891. Under the ordinary practice,
this appointment entitled Johnson to hold the office

until the senate convened, at which time it was the duty of the governor to renew the appointment to the senate and obtain the concurrence of that body.    The person  then  appointed  and  confirmed  would  serve out  the  unexpired  portion  of  the  four-year  term. Under the other theory, if the appointment of Johnson had been renewed according to the usual practice, and the appointment confirmed, he would have been entitled to hold the office until 1897, a period of about six years.    In the opinion of the writer, Breidenthal was chosen to fill out Johnson's unexpired term, and his right to the office terminated on March 21, 1895.

As the majority of the court hold  that his term does not expire until 1897, judgment will be awarded in favor of the defendant.

ALLEN, J., concurring.

JOHNSTON, J., dissenting.

MARTIN, C. J.:  I concur;  but after deciding that the four years' term is not vitiated by the provision for holding over until a successor is appointed and qualified, I would prefer to place my concurrence upon the ground that this statute does not recognize any vacant, unexpired or fractional term, and each incumbent appointed by the governor, with the advice and consent of the senate, is entitled to hold for the full term of four years.    In respect to terms, the statute is like that under consideration in *The State ex rel., v. Wentworth,* decided at the present session.